**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DEISSAC LAVER HILLIARD,** | ) | |
| **ID # 1392258** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:10-CV-2017-L (BH)** |
| | ) | |
| **RICK THALER, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this case has

been referred for findings, conclusions, and recommendation.

# I.  BACKGROUND

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice -

Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254.  The respondent is Rick Thaler, Director of TDCJ-CID.

**A.  Factual and Procedural History**

On July 28, 2003, the State indicted petitioner on two charges of aggravated sexual assault

of a child on or about May 12, 2003.  (Trial Transcript[F03-32061-MT]:2; Trial Transcript[F03-

32062-TM]:2).[1]  Petitioner entered open pleas of guilty to both charges on August 9, 2006, and after

a jury trial on the issue of punishment, he received two concurrent sixty-year sentences.  (Tr.:96-97,

107; R. 2:3-8; R. 5:35-6).

On direct appeal, petitioner alleged that he received ineffective assistance of counsel, that

his pleas were not entered freely and voluntarily, and that the trial court erred in failing to find him

---

[1] Unless otherwise indicated, "Tr." will hereafter refer to the trial transcript for Cause No. F03-32061-MT, as it includes
almost all of the relevant documents for both cases.

incompetent to enter his pleas.  His convictions were affirmed on direct appeal. *Hilliard v. State*, Nos. 05-06-01243-CR, 05-06-01244, 2007 WL 4281533, slip op. at 1-3 (Tex. App.–Dallas, Dec. 7, 2007, no pet.).  Petitioner did not file petitions for discretionary review.  He filed state habeas applications in the two cases on September 8, 2008. (State Habeas Transcript[WR-71,250-01]:2; S.H.Tr.[WR-71,250-02]:2).  On April 29, 2009, and on July 8, 2009, the Court of Criminal Appeals denied relief in the two cases without written order on the findings of the trial court. (S.H.Tr.Supp.[WR-71,250-01]:cover; S.H.Tr.[WR-71,250-02]:cover).

Petitioner mailed his petition for federal habeas relief on October 13, 2009. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9).  Respondent filed a response on February 26, 2010, and provided the state court records.  No reply brief was filed.

## B.  Substantive Issues

Petitioner raises four grounds for relief: 1) his trial counsel was ineffective by failing to explain the charges and by failing to communicate a plea bargain offer; 2) his trial counsel was ineffective because he labored under a conflict of interest; 3) his guilty plea was involuntary because petitioner did not understand the direct consequences of pleading guilty; and 4) he was incompetent to waive his constitutional rights and plead guilty.

## II.  EXHAUSTION OF STATE REMEDIES

Respondent contends that petitioner has failed to exhaust portions of his first and third grounds for relief because he failed to raise these claims at the state level either in a petition for discretionary review or in a state habeas application.

A petitioner must fully exhaust state remedies before seeking federal habeas relief.  28 U.S.C. § 2254(b).  To exhaust in accordance with § 2254, a petitioner must fairly present the factual

2

and legal basis of any claim to the highest available state court for review prior to raising it in federal court. *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for discretionary review or an application for writ of habeas corpus. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432. It is well-settled that federal courts can dismiss without prejudice a federal petition for writ of habeas corpus that contains unexhausted grounds for relief. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Thomas v. Collins*, 919 F.2d 333, 334 (5th Cir. 1990). As a matter of comity, the state courts must be given a fair opportunity to hear and consider the claims raised by an applicant before those claims are heard in federal court. *Picard v. Connor*, 404 U.S. 270, 275 (1971).

 "[N]otwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State", courts may deny a habeas petition on the merits. 28 U.S.C. § 2254(b)(2); *see also Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"). In this case, the administration of justice would be better served by bypassing the procedural issue and reaching the merits of the claim.[2]

### III. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

---

[2] Respondent also asserts that these grounds are procedurally barred because petitioner could have, but failed, to raise them at the state level. The Court also declines to apply a procedural bar. *See Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation recognizing that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005)

L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.  Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits[3] in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise under *Williams*, a state court unreasonably applies

---

[3]  "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).  Here, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals in such writ.

4

Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] prece-dent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'un-reasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV.  VOLUNTARINESS OF GUILTY PLEA

Petitioner asserts in his third and fourth grounds for relief that his guilty plea was involuntary because he did not understand the consequences of pleading guilty, he was not informed that he could seek sentencing by the court, and he was incompetent to plead guilty. He also claims that his trial attorney was ineffective because he did not advise petitioner about the direct consequences of pleading guilty or about a plea offer from the State, and that his plea was involuntary due his attorney's misrepresentations about other options that might have been available. (Brief at 4-5).

A plea of guilty waives a number of constitutional rights. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988). The Fourteenth Amendment Due Process Clause therefore imposes certain requirements to ensure the validity of a guilty plea. *Fischer v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978) (citing *Brady v. United States*, 397 U.S.

5

742 (1970); *Boykin*, 395 U.S. 238; *Johnson v. Zerbst*, 304 U.S. 458 (1938)).  "*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made."  *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000).  In addition, "the voluntary and intelligent nature of the plea [must] be apparent on the face of the record."  *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988).

A plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady*, 397 U.S. at 748).  "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'"  *Id.* (quoting *Brady*, 397 U.S. at 749).  Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation.  *See Daniel v. Cockrell*, 283 F.3d 697, 702-03 (5th Cir.), *cert. denied*, 537 U.S. 874 (2002); *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).  A plea qualifies as intelligent when the criminal defendant enters it after receiving 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"  *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).  "Before the trial court may accept a guilty plea, the court must ensure that the defendant 'has a full understanding of what the plea connotes and of its consequence.'"  *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991) (quoting *Boykin*, 395 U.S. at 244).  "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt."  *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

A prisoner may not generally "collaterally attack a voluntary and intelligent" plea.  *Taylor*,

6

933 F.2d at 329.  A guilty plea "entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *See Brady*, 397 U.S. at 755.  "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981) (per curiam).

## A.  Competence

A criminal defendant must be mentally competent to plead guilty. *Godinez v. Moran*, 509 U.S. 389, 396 (1993).  He must have a "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and "'a rational as well as factual understanding of the proceedings against him.'" *Id.* at 396, 398-402 (finding applicable standard to be the same as for determining competence to stand trial set forth in *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)).  "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings."[4] *Id.* at 401 n.12.

Here, the record reflects that after petitioner was arrested and indicted, he was examined numerous times by mental health experts for competence to stand trial.  On December 12, 2003, psychiatrist Dr. Michael Pittman examined petitioner and provided a report to the trial court opining that he was not competent to stand trial because he did not seem capable of cooperating with his

---

[4] "The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Godinez*, 509 U.S. at 401 n.12.  Because of this difference, the Court considers the competency issue separately from the voluntariness of petitioner's pleas.

attorney with a reasonable degree of rational understanding.  Pittman diagnosed petitioner at that time as having an IQ in the mild range of mental retardation.  (Tr.:10-12).  On February 17, 2004, petitioner was examined by a psychological associate with Dallas Metrocare Services who administered an intelligence test and a competency assessment.  He reported that petitioner's IQ was in the mild range of mental retardation and that he was not competent to stand trial because he had difficulty answering questions about basic legal concepts.  (Tr.:16-21).  On May 7, 2004, and on August 5, 2004, Dr. Pittman again examined petitioner and determined that he was not competent to stand trial for the same reasons as in his earlier reports.  (Tr.:24-5, 30-1).  On August 5, 2004, petitioner was also examined by psychiatrist Dr. Lisa Clayton, who diagnosed him as being mentally ill, most probably with a cognitive deficit disorder, and determined that he had no rational understanding of the charges against him, the possible penalties, and the various duties of courtroom personnel.  (Tr.[F03-32062-TM]:13-4).  On August 26, 2004, after a jury trial on the issue of competency, the trial court issued a judgment finding petitioner incompetent and ordering him committed to the North Texas State Hospital for a ninety-day period.  (Tr.:32-3).

After a period of commitment, petitioner was again examined by Dr. Michael Pittman and Dr. Lisa Clayton, and both provided reports to the trial court based on these examinations.  Pittman reported that based on his examination of petitioner on May 13, 2005, petitioner had a "subnormal intellect and a mild depression" but was able to consult with his attorney in a rational and reasonable manner, had the ability to understand the proceedings and the charges against him and the potential consequences, and was capable of cooperating with his attorney in formulating a defense with a "reasonable degree of rational understanding."  While a low IQ was evident, Pittman did not believe that this was of a severity to render petitioner incompetent to stand trial.  (Tr.:55-6).

Clayton reported that based on her examination of petitioner on May 12, 2005, he was

competent to stand trial because he understood the charges against him and possible penalties, had the ability to engage in reasonable choices of legal strategies and options, could communicate with counsel, and had a rational and factual understanding of the charges, the legal processes, and the roles of the courtroom personnel.  Clayton reported that petitioner had below average intelligence and that he told her that he had been in competency classes at the state hospital, where he learned about the court system and his rights.  (Tr.:58-9).[5]

At the time petitioner pled guilty, the trial judge noted on the record that petitioner had been found incompetent previously and had his competency restored, based upon evaluations by doctors. (R. 2:2).  On August 10, 2006, the trial judge issued a judgment finding petitioner to be competent to stand trial.  The judgment noted that the head of the North Texas State Hospital had reported to the court that petitioner was competent to stand trial after his commitment. (Tr.[F03-32062-TM]:52). Petitioner's counsel also stated on the record that he had read the reports provided to the court after petitioner was brought back from the hospital, that both he and his co-counsel had interviewed petitioner, and that they had no evidence that petitioner was not then competent despite keeping a "lookout" for that type of evidence. (R. 2:8).

At the state habeas level, petitioner's trial attorney submitted an affidavit stating he had requested that petitioner be examined for competency at the recommendation of petitioner's mother,

---

[5] Petitioner's step-mother, with whom petitioner lived for a number of years, testified at the punishment hearing about her understanding that petitioner was a "crack baby" whose mother abused drugs while she was pregnant and during his childhood, and that his father obtained custody of him when he was seven for this reason.  (R. 4:64).  Petitioner attended special education classes at a Dallas Independent School District high school and graduated; he also graduated from a vocational school, where he learned to cook. (R. 4:27-8).  Petitioner lived in his own apartment, took the bus to and from his work as a chef's assistant, and cooked, bathed, and groomed himself, but  she and his father helped him pay his bills and manage his money. (R. 4:34-7).  Petitioner's biological mother also testified, denying that she used drugs while she was  pregnant with petitioner but acknowledging that she was a drug addict when he was a child and that she gave up custody of him.  She also testified that petitioner is mentally retarded and that his pediatrician told her that he would always have the mind of a seven-year-old. (R. 4:171-77).

and that petitioner was examined by two psychiatrists who found him incompetent to stand trial.

A jury trial was held on the issue of competency, which the State did not contest, and the jury found

petitioner incompetent to stand trial.  He was sent to the state mental hospital, and after the hospital

found him competent to stand trial, he was returned to Dallas County.  He was again examined by

the same two doctors, who then found him competent to stand trial.  When counsel visited with

petitioner after his return, petitioner appeared oriented to place and time, and he understood who

counsel was and his function within the system.  Co-counsel also found petitioner to be competent

to discuss the case with her.  Counsel's affidavit states that the two doctors who examined petitioner

are highly trained independent forensic psychiatrists who have examined thousands of prisoners on

the issue of competency, that he had used both of them as witnesses, and that he did not believe that

he would prevail on the issue of competency in petitioner's case based on their findings.  Based on

personal observation, trial counsel and co-counsel both believed that petitioner was competent to

proceed to trial. (S.H.Tr.[WR-71,250-01]:49-50).

The trial court found that petitioner had been restored to competency prior to the entry of his

plea.  It found that the head of the state hospital had reported to the court that petitioner was

competent to stand trial, two doctors evaluated petitioner and determined that he was competent, and

both trial counsel and the trial court found petitioner to be competent.  The court found that

petitioner had failed to show that his plea was involuntary because of incompetency. (S.H.Tr.[WR-

71,250-01]:44-5).  The Court of Criminal Appeals denied relief on the basis of these findings.

The records shows that mental experts were in agreement that petitioner had an IQ in the

mildly mentally retarded range and that for some time after his arrest, petitioner was not competent

to stand trial.  After petitioner's commitment to the state hospital, however, and after he went

through an education program about the legal system, the same experts who had earlier found him

incompetent agreed that he was competent to stand trial. They found he had the ability to understand the proceedings and to rationally consult with counsel, and he had a rational and factual understanding of the proceedings against him. Petitioner's trial counsel agreed with this determination that petitioner was competent to stand trial and to also plead guilty. Petitioner has pointed to no additional evidence that conflicts with these assessments by mental health experts and petitioner's trial counsel. Therefore, notwithstanding his low IQ, petitioner has not shown that the state habeas court's denial of this claim is contrary to federal law or that the denial of relief was based on an unreasonable determination of the facts in light of the evidence presented at the state court level.

**B.  Understanding of Consequences of Plea**

Petitioner also asserts that his plea was involuntary because he did not understand the consequences of the plea and he was not informed that he could seek sentencing by the trial court.

On August 7, 2006, petitioner stated to the trial judge that he understood that he had been charged with aggravated sexual assault of a child and that he wished to plead guilty and have a jury assess his punishment. On the record, petitioner affirmatively stated that he was pleading "Guilty." He also acknowledged that he was not threatened, coerced, or intimidated into pleading guilty, that he was pleading freely and voluntarily, and that he signed the judicial confessions freely and voluntarily. (R. 2:2-4). Petitioner also stated that he understood that the jury could sentence him anywhere between 5 to 99 years or life in prison, that the jury could determine that a sentence be probated if the sentence was ten years or lower, and that he would have to register as a sex offender. Petitioner said he understood that he would have to serve one-half of any prison sentence before being eligible for parole, that eligibility for parole would not mean that he would receive parole, and that knowing all of these things, he still wanted to enter pleas of guilty. (R. 2:4-7). After the jury

11

was empaneled, the trial court again asked petitioner how he wished to plead.  Petitioner stated that he wished to plead guilty, that his decision was made voluntarily and freely, and that he understood that the trial court would instruct the jury to find him guilty.  (R. 4:5-7).  Petitioner's signed judicial confessions were admitted into evidence. (R. 6:State's Ex. 1-2).

At the state habeas level, counsel's affidavit stated that petitioner elected to plead guilty before a jury after consultation with his attorneys, and that no one intimidated, coerced, or deceived him into pleading guilty.  The trial court thoroughly admonished petitioner before accepting his plea, he responded that he understood his rights and waiver of rights and wished to plead guilty, and counsel had no reason to believe that petitioner did not understand any of the admonishments or that his plea was involuntary. (S.H.Tr.[WR-71,250-01]:49-50).  The Court of Criminal Appeals denied petitioner's state writ on its merits based on the findings of the trial court.  This denial is not contrary to federal law.

While petitioner contends that he did not understand the consequences of his pleas of guilty and did not know that he could have the trial court assess punishment, the state court record reflects that he was fully admonished about the consequences of pleading guilty and his desire to have the jury decide punishment.  He has not overcome the presumption of regularity and "great weight" accorded state court records.  *See Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that state-court records are accorded "great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that state-court records are entitled to a "presumption of regularity").  The trial court found during the state habeas process that trial counsel's statement in his affidavit that he discussed the plea bargain offer with petitioner was true and correct. (S.H.Tr.[WR-71,250-01]:43-44).  Petitioner has failed to present clear and convincing evidence that this state habeas finding should not be presumed correct.  He made a knowing and voluntary plea of guilty and is

12

entitled to no habeas relief on this claim.

## C. Ineffective Assistance of Counsel

Petitioner also claims that ineffective assistance of counsel renders his plea involuntary because his attorney did not explain the consequences of pleading guilty, that a plea bargain had been offered for a lesser punishment than what he received, other available options, or that he could have the trial court assess punishment. (Brief at 2, 5).

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)). However, a "defendant's mere subjective understanding that he would receive a lesser sentence" does not render a plea involuntary. *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002).[6] The plea stands unless the expectation of a lesser sentence resulted from "a promise or guarantee by the court, the prosecutor or defense counsel." Id.

With respect to guilty pleas, "[c]ounsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution." *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to

---

[6] *Daniels* is not cited for any proposition potentially abrogated in *United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004) (abrogating reliance on a "significantly less harsh test" of prejudice for sentencing errors in the § 2255 context), to the extent that any such abrogation occurred. *See* 376 F.3d at 438 n.4 (specifically distinguishing *Daniel* because that case dealt with prejudice in the context of § 2254).

the entry of the guilty plea.  He may only attack the voluntary and intelligent char-
acter of the guilty plea by showing that the advice he received from counsel was not
within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The *Strickland* test applies in the context of a guilty plea.  *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).  "[I]n a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error."  *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).  A failure to estab-lish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors.  *Id.* at 695-96.

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691.  To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  *Williams v. Taylor*, 529 U.S. 362, 393 n.17

14

(2000) (citations and internal quotation marks omitted).  Reviewing courts must consider the totality

of the evidence before the finder of fact in assessing whether the result would likely have been

different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695-96.  Petitioners must

"affirmatively prove prejudice."  *Id.* at 693.  They cannot satisfy the second prong of *Strickland* with

mere speculation and conjecture.  *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).

Counsel's affidavit at the state habeas level states that when he was first appointed to

represent petitioner, he met with petitioner at least twice and believed that he understood the charges

against him and the options available to him regarding a plea or trial.  No one intimidated, coerced,

or deceived petitioner into pleading guilty, and petitioner indicated that he understood his rights and

waiver of rights and still wished to plead guilty.  When counsel met with petitioner to discuss his

version of the facts and what petitioner wanted to do, petitioner responded with a story that was a

mixture of one of the witness's statements and his own embellishment but was a partial admission

of guilt.  Later, when co-counsel met with petitioner, he discussed the case with her and made a full

admission of guilt.  The plea offer in the case was for a punishment in the thirty-year range, and

because of this, petitioner elected to plead guilty before a jury after consultation with both of his

attorneys.  (S.H.Tr.[WR-71,250-01]:49-50).

The trial court made factual findings based on the affidavit that counsel was a trustworthy

individual and the statements in his affidavit were worthy of belief and true and correct. The court

concluded that petitioner was in no way denied his right to effective assistance of counsel at trial.

(S.H.Tr.[WR-71,250-01]:43-44). The Court of Criminal Appeals denied relief based on the findings

of the trial court.  This denial is not contrary to federal law.

Petitioner has not rebutted the presumption that the trial court's findings are correct by clear

and convincing evidence.  Under § 2254(d)(2), he has not shown that the state court's decisions were

based on an unreasonable determination of the facts in light of the evidence presented in the state court. The record shows that counsel met with petitioner several times, questioned him about the charged offenses, and discussed a plea bargain with him. While petitioner received a higher sentence than that offered to him by the State, guilty pleas are not rendered involuntary because a defendant pleads guilty out of a desire to limit the possible penalty after being advised by competent counsel that a plea would be to the defendant's advantage. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). As noted earlier, petitioner was advised by the trial court that the jury could impose a maximum sentence of life imprisonment. (R. 2:4-7). The record therefore reflects that petitioner understood the nature of the charge against him and the consequences of his plea.

In sum, the totality of the circumstances shows that petitioner voluntarily and knowingly entered a plea of guilty, and all claims relating to the voluntariness of his plea should be denied.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner also claims in his second ground for relief that his trial counsel was ineffective because of a conflict of interest, and he appears to assert that he was constructively denied counsel because he did not have available the advice of competent counsel. (Brief at 2).

### A.  Conflict of Interest

In support of his claim that his attorney was laboring under a conflict of interest, petitioner points to a letter his biological mother faxed to the trial court, dated May 16, 2005. It states that petitioner was declining his court-appointed attorney and that he had other representation obtained through the "Justice System for the Mentally Retarded." (Tr.:60, 62). Petitioner asserts that because he had stated a desire to obtain other counsel, his attorney had a conflict of interest. (Brief at 3).

When a prisoner shows an actual conflict that adversely affected his attorney's performance

and denied him his Sixth Amendment right to effective assistance of "conflict-free counsel," *Cuyler v. Sullivan*, 446 U.S. 335 (1980), provides the applicable standard for evaluating claims of ineffective assistance of counsel.  *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000).  In *Cuyler*, the Supreme Court held that in order for a criminal defendant to demonstrate a violation of Sixth Amendment rights that would entitle him to relief, the defendant must establish that his attorney was actively representing conflicting interests and that an actual conflict of interest adversely affected his attorney's performance.  Once a criminal defendant makes this showing, prejudice is presumed.  *Id.* at 349-50.  Since *Cuyler*, the Supreme Court has reiterated that a defendant is not entitled to a presumption that the prejudice prong of the *Strickland* standard has been met where there existed a conflict of interest on his attorney's part unless that conflict affected the attorney's performance.  *Mickens v. Taylor*, 535 U.S. 162, 172-73 (2002).  The Fifth Circuit Court of Appeals has further held that the *Cuyler* standard applies only to claims of ineffective assistance of counsel resulting from conflicts of interest caused by multiple representation.  *See United States  v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002); *Beets v. Scott*, 65 F.3d 1258, 1270-72 (5th Cir. 1995) (*en banc*).  Because petitioner does not identify a conflict of interest caused by multiple representation in this case, *Strickland* provides the proper standard of review, and prejudice is not presumed.  *See Newell*, 315 F.3d at 516; *Beets*, 65 F.3d at 1270-72.

Counsel's affidavit to the trial court during the state habeas process states that he did not know to which conflict petitioner referred, he did not recall any letter being sent to the trial court about a conflict, and he did not recall the trial judge mentioning any conflict to him.  Counsel was unaware of any facts or circumstances that raised a conflict of interest on his part, and petitioner never mentioned any conflict to him. (S.H.Tr.[WR-71,250-01]:50).  Based on the affidavit, the trial court found that petitioner had not presented sufficient facts to establish a conflict of interest and

recommended that this claim be denied.  The Court of Criminal Appeals denied relief on the basis of these findings.  This denial is not contrary to federal law.

At most, petitioner has alleged that his attorney had a conflict because petitioner did not want him as his attorney.[7]  The record reflects, however, that counsel was unaware of any desire on the part of petitioner and/or his mother to obtain other counsel.  Since petitioner's attorney was unaware of the existence of this letter, petitioner has failed to establish that his attorney's actions were affected by this letter.  Petitioner has failed to prove either prong of the *Strickland* standard; he has failed to establish that his attorney was deficient due to any alleged conflict or that petitioner was prejudiced by any alleged conflict.

## B.  Constructive Denial of Counsel

Petitioner also appears to contend that he was constructively denied the assistance of counsel. In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court recognized that a defendant might be constructively denied counsel although an attorney had been appointed to represent him. 466 U.S. at 654 n.11 ("[T]he performance of counsel may be so inadequate" as to constitute no assistance of counsel at all).  A defendant is constructively denied counsel when his attorney "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* at 659.  However, unless there is a constitutional error of such magnitude that "no amount of showing of want of prejudice would cure" the error, "there is generally no basis for finding a Sixth Amendment violation" in the absence of a showing of "how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 659 & n.26.  Furthermore,

> [c]ircumstances of that magnitude may be present on some occasions when although
> counsel is available to assist the accused during trial, the likelihood that any lawyer,

---

[7] There is no evidence in the record that any action was taken after petitioner's mother faxed her letter to the trial court.

> even a fully competent one, could provide effective assistance is so small that a pre-
> sumption of prejudice is appropriate without inquiry into the actual conduct of the
> trial.

*Id.* at 659-60.

The presumed prejudice standard of *Cronic* is reserved for "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658.  The *Cronic* standard does not apply when defense counsel has merely failed to oppose the prosecution at specific points of the proceedings – it applies only when counsel has *entirely* failed to challenge the prosecution's case. *Bell v. Cone*, 535 U.S. 685, 697 (2002).  When counsel provides "some meaningful assistance", the *Cronic* standard is inapplicable. *Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986).  Petitioner has the burden to show that he was constructively denied coun-sel. *See Childress v. Johnson*, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997).

Here, petitioner has not shown that he was constructively denied counsel.  Defense counsel represented petitioner prior to trial on the issue of competency and during his guilty plea.  Counsel represented petitioner during the voir dire process by questioning and striking potential jurors, during the punishment portion of the trial by cross-examining the State's witnesses and calling a defense witness, and during closing statements by arguing to the jury that petitioner was an appropriate candidate for probation.  (R. 3:78-96; R. 4:62-73, 95-98, 121-135, 153-54, 166-69, 172-74, 176-77; R. 5:20-26).  Petitioner was therefore not constructively denied counsel, and the *Cronic* standard is inapplicable.  Petitioner's ineffective assistance claims should also be denied.

## VI.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VII.  RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant

to 28 U.S.C. § 2254.

**SIGNED on this 28th day of April, 2010.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within fourteen days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE